UNITED STATES v. SOUTHERN PAC. R. CO. et al.

(Circuit Court, S. D. California. July 9, 1902.)

No. 878.

1. PUBLIC LANDS—RAILROAD GRANT—RIGHTS OF MORTGAGEES.
   The mortgagees of the Southern Pacific Railroad Company have no other or greater rights than the company itself in lands erroneously patented or certified under its grant.

2. SAME—CONSTRUCTION OF GRANT.
   None of the lands within the 30-mile limit of the grant made to the Atlantic & Pacific Railroad Company in California by Act July 27, 1866 (14 Stat. 292), passed to the Southern Pacific Railroad Company by virtue of the grants made to that company by the joint resolution of June 28, 1870 (16 Stat. 382), or the act of March 3, 1871 (16 Stat. 573).

3. SAME—SUIT TO DETERMINE RIGHTS UNDER RAILROAD GRANT—EQUITY JURISDICTION.
   The United States may maintain a suit in equity, under Acts March 3, 1887, Feb. 12, 1896, and March 2, 1896 (24 Stat. 556, 29 Stat. 6, and Id. 42), to set aside patents erroneously issued to a railroad company for lands under a grant, and to test the bona fides of persons claiming to be bona fide purchasers, and establish and confirm their rights in any of the lands so patented, and may in the same suit require an accounting from the railroad company in respect to such of the lands involved as it has sold, and obtain a decree against it for the sums recoverable therefor under such acts.

**4. EQUITY—OBJECTIONS TO JURISDICTION—TIME FOR MAKING.**

Objections to the jurisdiction of a court of equity on the ground that the remedy at law is plain, adequate, and complete must be made at the earliest opportunity, and before the defendants have entered upon their defense on the merits.

**5. PUBLIC LANDS—SUIT TO DETERMINE RIGHTS UNDER RAILROAD GRANT—PARTIES.**

In a suit by the United States under Act March 3, 1887, and its amendments, to determine rights in lands erroneously patented under a railroad grant, where it is alleged and shown that purchasers from the company are very numerous, and that they all occupy the same position, it is not necessary that all should be made defendants, but a number may be joined as representatives of the class, and the titles of all confirmed, where it appears that they were bona fide purchasers.

**6. SAME—CONSTRUCTION OF STATUTE.**

Act March 2, 1896, amendatory of prior acts relating to suits to recover lands erroneously patented under railroad grants, and which provides that "no patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed," but requires payment to be made for such lands to the United States either by the purchaser or by the grantee company in case it has received payment from the purchaser, does not operate to confirm the title of the company, or to enlarge its rights.

**7. SAME—RECOVERY OF PRICE OF LANDS SOLD BY COMPANY.**

The provision of such acts requiring the grantee company to pay to the United States the minimum government price for the lands erroneously patented to it, and which it has sold to bona fide purchasers, in case it has received so much from the purchaser, was within the power of congress, and is not invalid, as creating an indebtedness by a retrospective act, but, on the contrary, is a waiver by the government, to the extent of the excess above the minimum price, of its right to recover the full value of the land, which arose from the act of the company in selling the same without right.

**8. SAME.**

The fact that the error in issuing patents to a railroad company for lands to which it was not entitled under its grant was that of the land department constitutes neither a legal nor equitable defense to an action by the United States to recover such lands, or their value, when sold to bona fide purchasers, at least where such error did not prevent the company from obtaining all the lands to which it was entitled under its grant.

In Equity.   Suit for adjustment of land grant.

The Attorney General and J. H. Call, Sp. Asst. U. S. Atty., for the United States.

Wm. Singer, Jr., Wm. F. Herrin, T. M. Stewart, S. V. Landt, and R. H. F. Variel, for defendants.

ROSS, Circuit Judge.   By its bill the complainant sets up, among other things, the grants made by congress to the Atlantic & Pacific Railroad Company and to the defendant Southern Pacific Railroad Company by the act of July 27, 1866 (14 Stat. 292), and the grant to the defendant railroad company made by the joint resolution of June 28, 1870 (16 Stat. 382), and by the act of March 3, 1871 (16 Stat. 573), and the subsequent act of congress of July 6, 1886 (24 Stat. 123), declaring forfeited the grant to the Atlantic & Pacific Company of July 27, 1866, and restoring to the public domain all of the odd-numbered sections within 30 miles on each side of its line of road between the eastern boundary of California and the Pacific Ocean at San Buena

Ventura. It is alleged that all of the lands described in Exhibit A, annexed to and made part of the bill, situated in California, and consisting of separate and distinct tracts of the public lands, and aggregating 30,067.79 acres, fell within the 30-mile limits of the Atlantic & Pacific Railroad grant; that, regardless of the rights of the complainant, the defendant railroad company, as well as the other defendants, claim some title and interest in the lands described in Exhibit A, annexed to the bill, under some or all of the aforesaid acts of congress granting lands to the defendant railroad company, the precise nature and extent of which claims are unknown to the complainant, but which it alleges are unfounded; that subsequent to the passage of the aforesaid act of March 3, 1871, and prior to the year 1896, patents were erroneously issued by the department of the interior to the defendant railroad company in due form, purporting to convey to that company the lands described in the said Exhibit A. It is alleged that the grants made to the defendant railroad company by section 18 of the act of July 27, 1866, by the joint resolution of June 28, 1870, and by section 23 of the act of March 3, 1871, were made upon the same terms, conditions, restrictions, and limitations as the grant to the Atlantic & Pacific Railroad Company by the act of July 27, 1866, by section 20 of which latter act congress expressly reserved the right to alter, amend, or repeal that act. The bill also sets up the acts of congress of March 3, 1887 (24 Stat. 556), February 12, 1896 (29 Stat. 6), and March 2, 1896 (29 Stat. 42). By section 1 of the act of March 3, 1887, the secretary of the interior was authorized and directed "to immediately adjust, in accordance with the decisions of the supreme court, each of the railroad land grants made by congress to aid in the construction of railroads, and heretofore unadjusted." Sections 2 and 4 of the act are as follows:

"Sec. 2. That if it shall appear, upon the completion of such adjustments respectfully [ively], or sooner, that lands have been, from any cause, heretofore erroneously certified or patented, by the United States, to or for the use or benefit of any company claiming by, through, or under grant from the United States, to aid in the construction of a railroad, it shall be the duty of the secretary of the interior to thereupon demand from such company a relinquishment or reconveyance to the United States of all such lands, whether within granted or indemnity limits; and if such company shall neglect or fail to so reconvey such lands to the United States within ninety days after the aforesaid demand shall have been made, it shall thereupon be the duty of the attorney-general to commence and prosecute in the proper courts the necessary proceedings to cancel all patents, certification, or other evidence of title heretofore issued for such lands, and to restore the title thereof to the United States."

"Sec. 4. That as to all lands, except those mentioned in the foregoing section, which have been so erroneously certified or patented as aforesaid, and which have been sold by the grantee company to citizens of the United States or to persons who have declared their intention to become such citizens, the person or persons so purchasing in good faith, his heirs or assigns, shall be entitled to the land so purchased, upon making proof of the fact of such purchase at the proper land office, within such time and under such rules as may be prescribed by the secretary of the interior, after the grants respectively shall have been adjusted; and patents of the United States shall issue therefor, and shall relate back to the date of the original certification or patenting, and the secretary of the interior, on behalf of the United States, shall demand payment from the company which has so disposed of such lands of an amount equal to the government price of similar lands; and in case

of neglect or refusal of such company to make payment as hereafter specified, within ninety days after the demand shall have been made, the attorney-general shall cause suit or suits to be brought against such company for the said amount: provided, that nothing in this act shall prevent any purchaser of lands erroneously withdrawn, certified, or patented as aforesaid from re-covering the purchase-money therefor from the grantee company, less the amount paid to the United States by such company as by this act required: and provided, that a mortgage or pledge of said lands by the company shall not be considered as a sale for the purpose of this act, nor shall this act be construed as a declaration of forfeiture of any portion of any land grant for conditions broken, or as authorizing an entry for the same, or as a waiver of any rights that the United States may have on account of any breach of said conditions."

By the act of February 12, 1896, congress added the following pro-viso to section 4 of the act of March 3, 1887, just quoted:

"Provided further, that where such purchasers, their heirs or assigns, have paid only a portion of the purchase price to the company, which is less than the government price of similar lands, they shall be required, before the de-livery of patent for their lands, to pay to the government a sum equal to the difference between the portion of the purchase price so paid and the govern-ment price, and in such case the amount demanded from the company shall be the amount paid to it by such purchaser."

By the act of March 2, 1896, entitled "An act to provide for the ex-tension of the time within which suits may be brought to vacate and annul land patents, and for other purposes," congress declared, among other things, that "no patents to any lands held by a bona fide pur-chaser shall be vacated or annulled, but the right and title of such pur-chaser is hereby confirmed," with a proviso not pertinent to the pres-ent case.

Sections 2 and 3 of the act of March 2, 1896, are as follows:

"Sec. 2. That if any person claiming to be a bona fide purchaser of any lands erroneously patented or certified shall present his claim to the secre-tary of the interior prior to the institution of a suit to cancel a patent or certification, and if it shall appear that he is a bona fide purchaser, the secretary of the interior shall request that suit be brought against the patentee, or the corporation, company, person, or association of persons for whose benefit the certification was made, for the value of said land, which in no case shall be more than the minimum government price thereof, and the title of such claimant shall stand confirmed. An adverse decision by the secretary of the interior on the bona fides of such claimant shall not be conclusive of his rights, and if such claimant, or one claiming to be a bona fide purchaser, but who has not submitted his claim to the secretary of the interior, is made a party to such suit, and if found by the court to be a bona fide purchaser, the court shall decree a confirmation of the title, and shall render a decree in behalf of the United States against the patentee, corpora-tion, company, person, or association of persons for whose benefit the cer-tification was made for the value of the land as hereinbefore provided. Any bona fide purchaser of lands patented or certified to a railroad company, and who is not made a party to such suit, and who has not submitted his claim to the secretary of the interior, may establish his right as such bona fide purchaser in any United States court having jurisdiction of the subject-matter, or at his option as prescribed in sections three and four of chapter three hundred and seventy-six of the acts of the second session of the forty-ninth congress.

"Sec. 3. That if at any time prior to the institution of suit by the attorney-general to cancel any patent or certification of lands erroneously patented or certified a claim is presented to the secretary of the interior by or on behalf of any person or persons, corporation or corporations, claiming that such

person or persons, corporation or corporations, is a bona fide purchaser or are bona fide purchasers of any patented or certified land by deed or contract, or otherwise, from or through the original patentee or corporation to which patent or certification was issued, no suit or action shall be brought to cancel or annul the patent or certification for said land until such claim is investigated in said department of the interior; and if it shall appear that such person or corporation is a bona fide purchaser as aforesaid, or that such persons or corporations are such bona fide purchasers, then no such suit shall be instituted and the title of such claimant or claimants shall stand confirmed; but the secretary of the interior shall request that suit be brought in such case against the patentee, or the corporation, company, person, or association of persons for whose benefit the patent was issued or certification was made for the value of the land as hereinbefore specified."

The bill alleges that more than 90 days prior to the commencement of the suit the secretary of the interior demanded of the defendant railroad company a reconveyance and relinquishment to the United States of the lands so erroneously patented, with which demand the defendant railroad company refused, and ever since has refused, to comply; that prior to December 1, 1889, the defendant railroad company sold some of the said lands, or some interest therein, to numerous persons, but that the complainant is not able to state the names of the persons to whom such lands have been sold in good faith, or the extent of the interest conveyed, or the amount paid by such purchasers respectively, or the dates of such payments, except as to those of the lands described in the said Exhibit A, specifically set forth and described in Exhibit B, annexed to the bill, which specific portions so described in Exhibit B, it is alleged, were sold to numerous persons in good faith, and whose titles thereto were confirmed by the aforesaid act of congress of March 2, 1896, and for which lands the defendant railroad company received more than $2.50 per acre. It is further alleged that all of the lands described in Exhibit A, annexed to the bill, and constituting the subject of the suit, are of the value of more than $2.50 per acre. It is alleged that more than 1,000 persons, among whom are the defendants M. L. Wicks, Alice B. Slosson, Ivar A. Weid, James Mair, Pomona Land & Water Company, T. Banbury, Burdette Chandler, H. H. Linville, J. R. Nevin, Henry M. Loud, William Thorpe, and Fairmount Land & Water Company, a corporation, "sued as representatives of a class, have purchased, by immediate or mesne conveyances, from the defendant Southern Pacific Railroad Company, certain tracts of land described in said Exhibit A to this bill, or some interest therein, and who are too numerous to be made parties to this bill, and that all of said persons claim an interest in such lands so purchased under and by virtue of said grants to the defendant Southern Pacific Railroad Company, and said acts of March 3, 1887, February 12, 1896, and March 2, 1896; but the nature and extent of said claims are unknown to your orator, except as heretofore set forth, and your orator has joined as defendants the persons above named as representing such numerous purchasers, and which persons fairly represent said purchasers." It is alleged that on the 7th day of January, 1898, a suit brought by the present complainant against the defendant railroad company, and numbered 600, was depending in this court for the annulment of patents issued to certain lands, including those lands described in Exhibit B, annexed to the bill herein, and that

in its answer to the bill filed in that suit the defendant railroad company alleged that the tracts of land described in Exhibit B, annexed to the bill in the present suit, had been, prior to March 2, 1896, sold by the defendant railroad company to purchasers in good faith and for value, who were bona fide purchasers thereof within the meaning of the aforesaid acts of congress; and that thereafter, upon issue joined in said suit No. 600, the testimony of Jerome Madden, general land agent of the defendant company, was taken in its behalf, in the course of which he testified that those lands had been so sold by said company to purchasers in good faith and for value, and that thereupon the complainant in that suit, relying upon the truth of such averments and of such testimony, dismissed from said case No. 600 the lands described in Exhibit B, annexed to the bill in the present suit, without prejudice; by reason of which the complainant herein avers that the defendant company ought to be and is estopped from denying that the lands described in Exhibit B, annexed to the bill herein, were so sold by said company to purchasers in good faith and for value, and ought to be and is estopped from questioning the right of the complainant herein to maintain the present suit. The bill further alleges that a controversy has arisen, and still exists, between the complainant and the defendant railroad company, as to the true meaning of the aforesaid acts of congress of July 27, 1866, June 28, 1870, March 3, 1871, March 3, 1887, February 12, 1896, and March 2, 1896, and as to the respective rights and obligations of the complainant and the defendant railroad company thereunder; that said acts of congress constitute a valid contract between the complainant and the defendant railroad company, "whereby it was agreed and understood that where any land was erroneously certified or patented to said company and sold by said company to a bona fide purchaser, that the United States would grant to and confirm the title of the United States to such bona fide purchaser, and not to or for the benefit of said railroad company; and that in such case it was further agreed and understood that said railroad company would account to and pay over to the United States the value of such land, not exceeding the government price, and in case of a sale upon executory contract, where less than the government price had been received, would account to and pay over to the United States the amount received by said company upon such sales. Your orator further alleges that such construction and interpretation of said acts is disputed by the defendant railroad company, said company contending that it was not the title of the United States which was granted to and confirmed to such bona fide purchasers, but that the United States confirmed the title to the lands so sold by said company to said railroad company, which inured through it to such purchasers, and that said railroad company is not under any obligation in law or in equity to pay to the United States the government price, or any other price, for such lands, and that said company is still entitled and empowered to recover from such purchasers, for the use and benefit of said company, the unpaid balance of the purchase price of such lands, amounting to many thousands of dollars; and in pursuance of such claim said company has instituted, and still is instituting, numerous suits to enforce such contracts against numerous persons who have purchased

such lands from said company upon executory contracts, and where only a part of the purchase price has been paid, to the great embarrassment of your orator in the administration of public lands. Your orator further alleges that it expressly disclaims any purpose or desire to annul the title to any lands held by a bona fide purchaser from said railroad company, but desires to ascertain what lands and what interest in lands have been sold by said company to bona fide·purchasers, and what sum or sums are still owing to your orator by said company, to the end that patents to such lands not so sold may be annulled, and that said railroad company may be required to account to and pay over to your orator the government price of such lands as have been sold, and to the further end that your orator may protect and confirm the title of those bona fide purchasers who are entitled to receive a patent or confirmation of title from the United States by virtue of such acts of congress of March 3, 1887, and March 2, 1896." The prayer of the bill is that the court will determine the true construction of the acts of congress mentioned, and define the rights and obligations of the complainant and the defendant railroad company thereunder, and will determine the right and title of the complainant to the lands described in Exhibit A, annexed to the bill, and determine which of the said lands have been sold by the defendant railroad company to bona fide purchasers, and will annul the patents of such of the said lands as have not been sold by said company to bona fide purchasers, and quiet the title of the complainant thereto; that the defendant railroad company may be enjoined from commencing, prosecuting, or maintaining any suit against any person for the recovery of the purchase price of any of the lands described in said Exhibit A, or for the foreclosure of any contract respecting any of such lands; that as to those lands which have been sold by the defendant railroad company to bona fide purchasers it be required to account to the complainant for such sums as have been received by it from sales thereof, and to pay over such sums to the complainant; and for such other and further relief as to the court may seem equitable.

Answers were filed to the bill by each of the defendants named therein (other than the railroad company), and also by numerous other persons claiming portions of the lands described in Exhibit B, annexed to the bill, as bona fide purchasers thereof, each and all of which deny the alleged title of the United States, and allege that the lands in controversy were granted to the defendant railroad company by the acts of congress of July 27, 1866, June 28, 1870, and March 3, 1871, and that·they, respectively, are bona fide purchasers of portions thereof from that company. The answer of the defendant railroad company also puts in issue the alleged title of the complainant, and sets up that all of the lands here involved were embraced by the aforesaid grants to it by congress; and also alleges, among other things, that on or about April 1, 1875, it executed to the defendant D. O. Mills and Lloyd Tevis, as trustees, a deed of trust, conveying to them all of the lands described in Exhibit A, annexed to the bill herein, to secure the payment of negotiable mortgage bonds to be issued and sold by the company, and that prior to March 3, 1887, the company duly issued, sold, and delivered negotiable bonds, secured by the mortgage, of the

face value of $39,285,000, to bona fide purchasers thereof, who purchased the same without notice of any claim of the United States to or respecting any of the said lands, and that each and all of said purchasers paid the full value of the bonds, and that $10,000,000 in value of them are still outstanding and unpaid in the hands of the purchasers; that prior to the commencement of the present suit the defendant Homer S. King was duly substituted for Tevis as such trustee; that on August 25, 1888, the defendant railroad company executed to the defendant Central Trust Company of New York a further mortgage or deed of trust conveying to it all of the lands involved herein, as security for the payment of certain negotiable bonds to be issued and sold by the defendant railroad company, which bonds, of the face value of $11,375,000, were, prior to the year 1893, duly issued, sold, and delivered to bona fide purchasers, who purchased the same in good faith, and without notice of any claim on the part of the United States to or respecting any of the lands in question; and that on September 15, 1893, the defendant railroad company executed to the defendant Central Trust Company of New York a further mortgage or deed of trust covering the same lands to secure the payment of other and further negotiable mortgage bonds, which were thereafter likewise issued, sold, and delivered to bona fide purchasers without notice of any claim of the United States to or respecting any of the said lands.

Annexed to the answer of the defendant railroad company is an exhibit, which it is averred correctly sets forth the full particulars of sales made by the defendant railroad company of the lands described in Exhibits A and B, annexed to the bill of complaint, and it is alleged that each of the sales set forth in the exhibit annexed to the answer was made to a bona fide purchaser, and a citizen of the United States, who purchased in good faith, and for the full value of the land at the time of the purchase, without notice that the United States had or claimed to have any interest whatever in or to the land so purchased, and who in good faith believed that in making such purchase he was acquiring the true title to the land bought. The answer denies that the defendant railroad company is in any wise accountable or indebted to the complainant for moneys received by it for any of the lands referred to in the bill, and alleges that the United States has never demanded that the defendant railroad company pay to it any price or sum for the land so sold. The answer also denies that the defendant Wicks, and other of the individual defendants similarly situated, represent a class of persons, or any person or persons other than themselves and their predecessors in interest, holding title under the defendant railroad company.

In so far as the mortgagees are concerned, it is sufficient to say that it has been heretofore held by this court, as well as by the supreme court of the United States, that they have no other or greater rights than the defendant railroad company. U. S. v. Southern Pac. R. Co. (No. 600; C. C.) 86 Fed. 962; U. S. v. Southern Pac. R. Co. (Nos. 587, 662, 675; C. C.) 94 Fed. 427; Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355. Further reference to them is therefore unnecessary.

The agreed statement of facts shows that each of the separate and distinct tracts of the public lands forming the subject of the suit specifically described in Exhibit A, annexed to the bill, and aggregating 30,067.79 acres, fell within the 30-mile limits of the Atlantic & Pacific grant; and, as I understand the evidence, none of them are embraced by the common-place limits of that grant and the grant made to the defendant railroad company by the same act of July 27, 1866, but do fall within the limits of the branch-line grant to that company. In the case of Southern Pac. R. Co. v. U. S., 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307, it was held that the United States, having, by the forfeiture act of July 6, 1886, become possessed of all the rights and interest of the Atlantic & Pacific Railroad Company in the grant made to it by the act of July 27, 1866, within the limits of California, had an equal undivided moiety in all the odd-numbered sections which lie within the conflicting place limits of that grant and of that made to the defendant Southern Pacific Railroad Company by the same act of July 27, 1866, by which the latter company acquired the other equal undivided moiety thereof. But that case left undisturbed the preceding decisions, by which it has been adjudged that none of the public lands within the 30-mile limits of the grant made by congress on the 27th day of July, 1866, to the Atlantic & Pacific Railroad Company ever passed to the defendant Southern Pacific Railroad Company by virtue of the grant made by congress to that company by the joint resolution of June 28, 1870, or by the act of March 3, 1871. U. S. v. Southern Pac. R. Co., 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091; U. S. v. Colton Marble & Lime Co., 146 U. S. 615, 13 Sup. Ct. 163, 36 L. Ed. 1104; Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; U. S. v. Southern Pac. R. Co. (C. C.) 86 Fed. 962; Southern Pac. R. Co. v. U. S., 38 C. C. A. 619, 98 Fed. 27. It results that the defendant Southern Pacific Railroad Company never acquired any interest in any portion of the lands in suit.

The case further shows that the officers of the government, in the due and orderly course of proceedings, but misinterpreting the law applicable thereto, issued in due and proper form to the defendant railroad company patents to the tracts of public land described in Exhibit A, annexed to the bill, certain specific tracts of which (described in Exhibit B, annexed to the bill) the complainant alleges the defendant railroad company thereafter conveyed, and certain other specific tracts of which it contracted to convey, to various bona fide purchasers, a number of whom were made defendants to the bill individually, and, as contended on the part of the complainant, as representatives of the balance of such purchasers. That the government title to the lands thus patented to the defendant railroad company thereupon passed to that company is not questioned, and it is equally clear that under the decisions above cited the title was erroneously so conveyed, and wholly without consideration. The right of the government—the real owner of the land—to maintain in a court of equity a suit to set aside such conveyances and re-establish its title, in order that it may hold the land unclouded, or convey it to one entitled thereto, cannot be doubted. U. S. v. Hughes, 11 How. 568, 13 L. Ed. 809; Hughes v. U. S., 4 Wall. 232, 18 L. Ed. 303; Curtner v. U. S., 149 U. S. 672, 673, 13 Sup. Ct.

985, 1041, 37 L. Ed. 890; U. S. v. Southern Bell Tel. Co., 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450. Whether the right should be exercised, and, if so, under and subject to what conditions, was a matter within the control of congress. U. S. v. Winona & St. P. R. Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789. By its acts of March 3, 1887, February 12, 1896, and March 2, 1896, congress did provide for the assertion of that right, subject to certain specific provisions respecting the confirmation of sales made by the railroad company to bona fide purchasers, and with the provisions already made to appear concerning the amounts of money that should be exacted by the government from the company for such of the lands as it might have sold and conveyed, or contracted to convey, to bona fide purchasers. The evidence shows that, as a matter of fact, all of the lands involved in the suit were either sold or contracted to be sold by the defendant railroad company to bona fide purchasers at prices exceeding the government price therefor. But the bill alleged that only a part of the lands therein described, and of which the complainant was alleged to be the owner, had been sold or contracted to be sold by the railroad company to bona fide purchasers, and it sought discovery and an adjudication by the court as to whether any of the other tracts forming the subject of the suit had been so sold to a bona fide purchaser or purchasers, and, if so, which of them. The answers of all of the defendants denied any interest in the complainant, and expressly alleged that each and every of the tracts of land in question was, prior to the commencement of the suit, granted by the complainant to the defendant railroad company. The case presented by the pleadings was, therefore, very clearly one within the equity jurisdiction of the court, calling for a decree quieting the disputes in respect to the title to the various tracts of land, and involving an inquiry into the question of bona fides in those instances where conveyances of any of the tracts, or contracts therefor, had been made by the defendant railroad company. The point made on behalf of the defendant railroad company, to the effect that the complainant's cause of action is purely and only an indivisible common-law demand for the value of so many acres of land, could not, therefore, be sustained, even if it had been made before answer to the merits, and had been properly pleaded; neither of which was done. In Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 32 L. Ed. 1005, the court said:

"The point is also pressed that the remedy at law was plain, adequate, and complete, and jurisdiction in equity therefore wanting. * * * The defendants fully answered the bill, and raised no such objection; and, the cause being at issue, and evidence taken, it was ordered, on the 23d of February, 1883, by consent, to be heard by the general term in the first instance. On the 24th of March, 1884, the defendant moved to dismiss on the ground of the adequacy of the remedy at law. We have had occasion recently to remark that, where it is competent for the court to grant the relief sought, and it has jurisdiction of the subject-matter, this objection should be taken at the earliest opportunity, and before the defendants enter upon a full defense."

See, also, Brown v. Iron Co., 134 U. S. 530, 535, 10 Sup. Ct. 604, 33 L. Ed. 1021; Perego v. Dodge, 163 U. S. 160, 164, 16 Sup. Ct. 971, 41 L. Ed. 113; Williamson v. Monroe (C. C.) 101 Fed. 322, 329.

Moreover, by sections 2 and 3 of the act of March 2, 1896, express provision was made by congress not only for suit by the United States to test the bona fides of persons claiming to be bona fide purchasers of any lands erroneously patented or certified under land grants in aid of the construction of railroads, and for confirmation by decree of the court of such bona fide sales, but it was also there expressly declared that any bona fide purchaser of lands erroneously patented or certified to such railroad company, who is not made a party to such suit on the part of the government, and who has not submitted his claim to the secretary of the interior, is authorized to "establish his right as such bona fide purchaser in any United States court having jurisdiction of the subject-matter, or, at his option, as prescribed in sections three and four of chapter three hundred and seventy-six of the acts of the second session of the forty-ninth congress"; so that, upon the facts appearing in the present case, very many such suits might have been brought against the United States to establish the rights of the bona fide purchasers of the lands here involved, but for the fact that they are all covered by the present suit, which is another reason why this suit was properly brought, for the avoidance of a multiplicity of actions is a common ground for the exercise of the jurisdiction of a court of equity. Story, Eq. Pl. §§ 284–286; Pom. Eq. Jur. §§ 256, 269; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; Brown v. Trust & Safe Deposit Co., 128 U. S. 403, 410, 9 Sup. Ct. 127, 32 L. Ed. 468; Bailey v. Tillinghast, 40 C. C. A. 93, 99 Fed. 801. The equitable jurisdiction of the court having been properly invoked, and having attached, the court will, on well-settled principles, proceed to the final decision of the entire case. U. S. v. Union Pac. R. Co., 160 U. S. 52, 16 Sup. Ct. 190, 40 L. Ed. 319; City of Walla Walla v. Walla Walla Water Co., 172 U. S. 12, 19 Sup. Ct. 77, 43 L. Ed. 341; Hopkins v. Grimshaw, 165 U. S. 342, 358, 17 Sup. Ct. 401, 41 L. Ed. 739; Williamson v. Monroe (C. C.) 101 Fed. 322, 329.

The defendant railroad company is the grantor of all of the other defendants, and in its answer set up the title claimed by it to the lands in question under the congressional grants, and alleged and proved that by virtue of those grants the officers of the government issued to it patents for all of the lands, all of which it either deeded or contracted to convey to bona fide purchasers, among whom are all of its codefendants, who may, in view of the alleged and agreed fact that such purchasers are very numerous, and of the showing that all of them occupy a precisely similar position, be properly held to represent the class. Equity Rule No. 48; Story, Eq. Pl. §§ 95, 97, 127; Davis v. Gray, 16 Wall. 203, 232, 233, 21 L. Ed. 447. As the proof shows that all of the lands in suit were, prior to its commencement, either sold or conveyed, or contracted to be conveyed, by the defendant railroad company to bona fide purchasers, it is obvious that the complainant is not entitled to have any of the patents in question canceled, because of that provision of the act of congress of March 2, 1896, declaring that "no patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed." The preceding act of March 3, 1887, supplemented by that of Febru-

ary 12, 1896, contemplated the annulment of patents erroneously issued to land-grant railroad companies, even where the lands for which such patents were issued had been sold by such companies to bona fide purchasers having the requisite citizenship; in which latter event the issuance of patents directly to such purchasers, upon a compliance with the provisions of the act, was authorized and directed. But the subsequent act of March 2, 1896, provided otherwise, expressly declaring, as has been shown, that "no patent to any lands held by a bona fide purchaser shall be vacated or annulled," and in terms confirming the right and title of all such purchasers. There is nothing in the language of either act looking to a confirmation of any title in the land-grant companies to any public land erroneously patented to them; such confirmation being, to the extent to which it is given, to bona fide purchasers from the companies. And in neither act is there any intention manifested on the part of congress to donate any of the lands so erroneously certified or patented to either of the land-grant companies or to any bona fide purchaser thereof. On the contrary, the provision is that, where such bona fide purchasers have paid to the company for the land an amount at least equal to the government price for similar land, then suit shall be brought on the part of the government against such company to recover the government price of the land; and in cases where such bona fide purchasers have paid to the company less than the government price for similar land such purchasers shall pay the government therefor a sum equal to the difference between the portion of the purchase price paid by them to the company and the government price for similar land, and suit be brought by the government against the grantee company for the balance; that is to say, for the amount received by the company from the bona fide purchasers.

On behalf of the defendant railroad company it is said that "Congress exhausted its constitutional power when it confirmed the titles of the purchasers. It could not, by its fiat, make the defendant a debtor by retrospective act." The answer is that the company, having sold and disposed of the government's property without right, was, regardless of the statute, liable to the government, if not for its true value, certainly for the amount of money received by the company therefor, and which it had no right to retain; for, having received the land illegally, and disposed of it for money, there was an implied contract on the part of the company to pay over the money so received to its true owner. Pullman's Palace-Car Co. v. Central Transp. Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108, and cases there cited. There was no attempt on the part of congress to add to the company's legal or equitable liability, but surely it could waive the whole or any part of the right of the United States without any valid objection on the part of the company. And by the legislation under consideration congress did waive a part of the government's right in the present case; for it appears that all of the lands in suit that were conveyed by the company were sold by it for sums in excess of the government price for such lands, and in those instances in which there were only contracts for deeds on the part of the defendant railroad company, with part payment only of the agreed price therefor, the suit authorized and brought is only for the latter amount in the latter instances, and for

the minimum government price in the other.   It is perfectly plain that the acts of March 3, 1887, February 12, 1896, and March 2, 1896, were remedial in their nature, and it has been heretofore so adjudged by this court in the course of the litigation between the United States and the defendant railroad company.   It is equally clear that the legislation resulted in benefit to that company.   That fact in part appears from its answer in the present suit, where it is shown that the lands in question which were erroneously patented were sold by it at prices largely in excess of the government price for such lands; and it is further shown by its supplemental answer in case No. 600, already referred to, and in evidence in the present suit, wherein it was alleged that these same lands, which were,' on motion of the government in that case, dismissed therefrom without prejudice, were sold by the company to bona fide purchasers, whose title thereto was confirmed by the act of congress of March 2, 1896, and which act the company there pleaded in bar of the government's suit.   Taking the benefits of the act, ·the company must, upon obvious principles of fairness, accept its burdens.

It is contended on the part of the defendant railroad company that the complainant is precluded from recovering from it anything for the lands in suit by reason of the decision of the supreme court in the case of U. S. v. Winona & St. P. R. Co., 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789.   This contention is based upon this language of the court in concluding its opinion in that case:

"If it be suggested that under the scope of these acts, though the suit must fail so far as it is one to set aside and cancel the certification, it may yet be maintained against the defendant railroad company for the value of the lands so erroneously certified, and that the decree should be modified to this extent, it is sufficient to say that: First, the government has not asked any such decree; second, that it may be doubted whether, for the mere purpose of recovering money, an action at law must not be the remedy pursued; but, lastly, and chiefly, that it does not appear from this record either that the railroad company received an excess of lands, or has even received (these lands included) the full quantity of lands promised in the grant; and, further, that it does not appear that there were not within the granted or indemnity limits lands which the company might have rightfully received but for this erroneous certification.   It will hardly be contended that if, simply through a mistake of the land department, these lands were certified when at the time other lands were open to certification which could rightfully have been certified, and which have since been disposed of by the government to other parties, so that there is now no way of filling the grant, the government can nevertheless recover the value of the lands so erroneously certified.   In other words, the mistake of the officers of the government cannot be both potent to prevent the railroad company obtaining its full quota of lands, and at the same time potent to enable the government to recover from the company the value of lands erroneously certified."

It is to be observed, in the first place, that in the case just referred to the government did not seek to recover the value of any land, and therefore no such question as is here presented was involved in that case, as was expressly stated by the court.   But the case itself was wholly unlike the present one, for, as the defendant railroad company's grant did not, according to the decisions above cited, embrace the lands in suit, none of them could form the basis of any indemnity selection.   To which may be added the fact that the parties to the present

suit "stipulated and agreed * * * that odd sections of land, exceeding twenty thousand acres in quantity, are to be found within the indemnity limits of each of the grants made to the Southern Pacific Railroad Company by the acts of July 27, 1866, and March 3, 1871, which are subject to selection, but have not been selected by said company."

It results, I think, that the complainant is entitled to judgment against the defendant railroad company, at the minimum government price, for all of those portions of the lands in suit for which it has been paid so much by bona fide purchasers, and for those portions thereof for which it has been paid less than such government price the full amount so paid, and that such of the bona fide purchasers as have paid to the defendant railroad company the full government price of such lands are entitled to a confirmation of the lands so purchased and paid for, and those of such purchasers as have paid to the company for the lands purchased by them, respectively, less than the government price thereof, are entitled to like confirmation, upon paying to the complainant the difference between the amount paid by them to the defendant railroad company and such minimum government price.

The counsel of the respective parties, who are familiar with the details of these numerous purchases, can, no doubt, agree upon a decree that meets the views of the court above indicated, and a decree in accordance therewith will be entered; otherwise I shall have to go through the evidence in respect to the various sales in order to enter the proper decree.