# SAN JOSÉ LAND AND WATER COMPANY *v.* SAN JOSÉ RANCH COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 113.   Submitted December 2, 1902.—Decided March 2, 1903.

Although no Federal right, title or immunity was specially set up or claimed in the complaint, it is sufficient if it appears in the motion for new trial and in the assignment of error in the state Supreme Court. In this case it also appears from the opinion of the court that the question was whether the plaintiff in error had brought itself within the scope of an act of Congress upon which it relied.

Under the rule of this court requiring opinions to be sent up with the record, it is a sufficient compliance with the words "specially set up and claimed" that the Federal question was fully considered in the opinion of the court, and ruled against the plaintiff in error.

A party who, on complying with the provisions of an act of Congress would have the right to purchase lands, part of the public domain, but who has not complied with the requirements of the act, is not entitled, upon the mere showing of such right to purchase, to demand that its title be adjudged good and valid, and that another party who is in possession be adjudged to have no estate or interest in the land, or that such other person be enjoined from asserting any adverse claim, or that the claimant recover the possession of the land with the right of ousting the defendant from the improvements made thereon by its predecessors.

THIS was an action brought in 1889 by the Land and Water Company, under the Code of Civil Procedure of California, to quiet the title of the plaintiff and determine the nature of the adverse claim of the defendant, to the half of a quarter section of land, which had been sold by the Southern Pacific Railroad Company February 28, 1887, to plaintiff's predecessors in title as part of its land grant of 1871.

The case was tried in 1890, though the decree was not entered until 1897. The facts found by the court were substantially that the Southern Pacific Railroad Company had accepted the benefit of a land grant made March 3, 1871, to the Texas and Pacific Railroad, filed its map of location April 3, 1871, and on August 12, 1873, formed a new corporation, also known as the Southern Pacific Railroad Company; built and constructed a road from Tehachapi Pass by way of Los Angeles to Yuma, and selected the land in question under the act of March 3, 1871; that such land was within the place limits of the Southern Pacific, and also within the indemnity limits of a land grant to the Atlantic and Pacific Railroad by act of July 27, 1866. This latter company never complied with the terms of the grant and never built its road.

That on February 28, 1887, the Southern Pacific agreed with two parties named Nolan and Heckenlively to sell them this land, and after the receipt from the United States of a patent therefor, to deliver them a deed; that by subsequent conveyances, and on August 29, 1888, the right of the grantees became vested in the plaintiff, the San José Land and Water Company; that the land is situated in San Dimas Canyon, through a portion of which the San Dimas Creek flows; that prior to December, 1883, one Stowell claimed to own a water right in the waters flowing down such creek, the character and extent of which the court did not adjudicate, and about that time entered upon the land and constructed across a portion of it a twelve-inch pipe line for the purpose of conducting the water so claimed by him from its point of diversion across said lands to other lands; that prior to July, 1887, the San José Ranch Company, defendant, had, by mesne conveyances, succeeded to the rights of Stowell, and also constructed upon such land, at a point where

the waters of San Dimas Creek flowed, a brick and cement forebay, sand box or dam, and laid therefrom across a portion of said land a fourteen-inch pipe line, both of which pipe lines it claims the right to maintain, but makes no other claim of right to such lands.

Upon this state of facts the Superior Court entered a judgment in favor of the defendant, which was affirmed by the Supreme Court. 129 California, 673. Whereupon the plaintiff sued out this writ of error.

*Mr. W. H. Anderson, Mr. James Anderson* and *Mr. Richard Dunnigan* for plaintiff in error.

*Mr. John S. Chapman* for defendant in error.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

Motion is made to dismiss this writ of error upon the ground that no Federal right, title, privilege or immunity was "specially set up or claimed" by the plaintiff in error, as required by the third clause of Rev. Stat., sec. 709. None such appears in the complaint, although we think it sufficiently appears in the motion for a new trial and in the assignments of error in the state Supreme Court. It also appears from the opinion of the court that plaintiff relied upon the act of Congress of March 3, 1887, for the readjustment of land grants, 24 Stat. 556, and the question considered by the court, and upon which the case turned, was whether the plaintiff had brought itself within the scope of that act. This question was fully considered by the court, and it was held that the defendant, having acquired its rights prior to the act of 1887, must prevail against the right claimed by the plaintiff.

While the right under the act of 1887, thus considered, was not originally specially set up and claimed by the plaintiff, inasmuch as it was not an original right, but a right available in rebuttal of the defence, it is one which appears to have been insisted upon in the argument; and under the rule of this court,

requiring the opinions to be sent up with the record, it has been frequently held to be a sufficient compliance with the words " specially set up and claimed," that it was fully considered in the opinion of the court and ruled against the plaintiff in error. *Murdock* v. *Memphis*, 20 Wall. 590, 633; *Gross* v. *United States Mortgage Co.*, 108 U. S. 477; *Philadelphia Fire Association* v. *New York*, 119 U. S. 110, 115; *Egan* v. *Hart*, 165 U. S. 188; *Sayward* v. *Denny*, 158 U. S. 180, 184; *Mallett* v. *North Carolina*, 181 U. S. 589. These must be considered as leading, under our change of rule, to a different result from that reached in some prior cases, *Williams* v. *Norris*, 12 Wheat. 117; *Rector* v. *Ashley*, 6 Wall. 142, and *Gibson* v. *Chouteau*, 8 Wall. 314, in which we held that the opinion of the state court could not be resorted to for the purpose of showing that a question of Federal cognizance was decided.

2. The case upon the merits presents but little difficulty. The action is brought under sec. 738 of the Code of Civil Procedure of California, which provides that " an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

The land in question was within the indemnity limits of the land grant of July 26, 1866, 14 Stat. 292, to the Atlantic and Pacific Railroad Company. Plaintiff, however, claims nothing under this grant, as the railroad company never complied with its terms; never built its road, and the grant was forfeited by act of July 6, 1886, 24 Stat. 123, and the land restored to the public domain. The act, however, becomes pertinent in another connection.

The land in question was also within the place limits of the grant to the Texas and Pacific Railroad Company by act of March 3, 1871, 16 Stat. 573, and subsequently became vested in the Southern Pacific, which constructed the road and selected the land in question, claiming it under that act.

It was held by this court, however, in the *United States* v. *Southern Pacific Railroad Company*, 146 U. S. 570, that the forfeiture of the Atlantic and Pacific grant of July 6, 1886, did not enure to the benefit of the Southern Pacific, which held the

later grant of the same land, but to the benefit of the United States, and thereby became a part of their public lands. In the next following case, *United States* v. *Colton Marble & Lime Co.*, 146 U. S. 615, this ruling was extended to the indemnity lands of the Atlantic and Pacific, which, upon forfeiture of its land grant, also reverted to the United States.

Hence on February 28, 1887, when the Southern Pacific Company contracted to sell these lands to Nolan and Heckenlively, it had really nothing to sell, and no interest in the land that could pass under that agreement. There was a stipulation in it to make a deed of the premises as soon as the railroad had received a patent therefor from the United States; that it would use ordinary diligence to procure such patent, and that, if in consequence of circumstances beyond its control, it failed to obtain a patent, it guaranteed nothing with regard to the title, but agreed to repay everything which had been paid by the grantees. There was a further agreement that the contract should not be assignable except by endorsement, and with the written consent of the company, and a written promise of the assignee to perform all the undertakings and promises of the grantees.

After making the first payment and paying the annual interest to February 28, 1892, the grantees ceased all further payments. The findings show that at the time of the execution of the contract, "said tract of land was not in the *bona fide* occupation of any adverse claimant under the preëmption or homestead laws of the United States, and the same had not been settled upon at the date of such purchase, or on the 3d day of March, 1887, or subsequent to December 1, 1882, by any person claiming to enter the same under the settlement laws of the United States." That neither the grantees nor their assigns ever settled upon the land, cultivated or fenced it, although Heckenlively did, shortly after the purchase, enter upon the land and begin the construction of a ditch and tunnel thereon. Subsequently the land passed by intermediate conveyances to the plaintiff. Manifestly, however, there was a clear failure of title on the part of the plaintiff to maintain this action. The Southern Pacific had no title to convey, and beyond this there

is no finding that the contract was assigned by endorsement or with the written consent of the railroad company, or that there was any promise on the part of the assignees to perform the undertakings of the original grantees.

Plaintiff's claim to the land must rest, if at all, upon the act of Congress of March 3, 1887, 24 Stat. 556, entitled " An act to provide for the adjustment of land grants made by Congress to aid in the construction of railroads and for the forfeiture of unearned lands, and for other purposes "—the main purpose of which act was to relieve *bona fide* purchasers from railway companies of forfeited lands, by permitting such purchasers or settlers to perfect their entries upon compliance with the public land laws.   By section 5 of this act, " where any said company shall have sold to citizens of the United States,  .  .  .   as a part of its grant, lands not conveyed to or for the use of such company,  .  .  .   and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the *bona fide* purchaser thereof from said company to make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patent shall issue therefor to said *bona fide* purchaser, his heirs or assigns."   The section, however, contained provisos excepting from its terms all lands which at the date of such sales from the government were in the *bona fide* occupation of adverse claimants under the preëmption or homestead laws, and also of lands settled upon subsequent to the first day of December, 1882, by persons claiming to enter the same under the settlement laws of the United States.

There are two difficulties connected with the application of this statute : (1) Assuming that Nolan and Heckenlively were *bona fide* purchasers in good faith from the government, which indeed is a part of the finding, there is nothing to indicate that they had ever made payment to the United States for the lands, or ever applied to do so ; nor does a patent ever appear to have been issued to them.   In short, the plaintiff relies upon the statute without showing that anything was done under it. (2) The provisions of this section do not apply to lands occupied adversely under the preëmption, homestead or settlement laws

of the United States, and the finding in this connection is that in 1883 one Stowell owned, or claimed to own, a certain water right in the waters of San Dimas Creek, which flowed through a portion of the land, the character and extent of which water right the court did not find, and that in November of that year Stowell entered on the land, laid and constructed across a portion of it a twelve-inch pipe line for the purpose of taking the water across the land to other lands, probably for the purposes of irrigation ; and that in July, 1887, the defendant, which had by mesne conveyances succeeded to this water right of Stowell, entered upon the land and built and constructed thereon a stone, brick and cement forebay, sand box or dam, and also a fourteen-inch pipe line across a portion of the lands.    It still claims the right to these improvements, but makes no other claim of right, title or interest to the land or any part thereof.

The record does not show exactly how Stowell obtained his rights to the waters of this creek, although the testimony sent up with the record indicates that one Haynes settled upon the land in question in 1869, and obtained a patent either in August or September, 1878; that he used the water from the creek to irrigate the land ; made a dam and a ditch and ran it down to the ranch ; that he began using the water in March, 1870, and so used it up to the spring of 1878, when he obtained the patent, sold to Stowell, and conveyed the land by deed.

Conceding, however, that, under the findings, we cannot look back of 1883, when Stowell entered the land and laid a twelve-inch pipe line there, under a claim of ownership of the water right, we see no reason why he and his grantees are not protected by section 9 of the act of July 26, 1866, 14 Stat. 251; which declares that, " whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed."

Bearing in mind that these lands were from July 6, 1886, the

date of the forfeiture, public lands, subject to the preëmption, homestead or settlement laws, and that at the time Stowell entered upon the land in question, and constructed a pipe line thereon, (1883,) it seems to have been wholly unoccupied, we think the fact that Heckenlively, under his agreement of purchase of February 28, 1887, and shortly after the same was executed, entered upon the land and began the construction of a ditch and tunnel there, becomes immaterial, since there is a finding that he never settled upon the land, cultivated or fenced it, or took possession of it, and no finding how long he continued the construction of the ditch or tunnel, or the amount of work in connection therewith. For aught that appears he may have abandoned it immediately. There is no evidence that the original grantees from the railroad company, or their successors in interest, ever sought to take advantage of the act of 1887, or ever applied to purchase the lands, or made payment to the United States, or did anything whatever before the beginning of this suit to indicate that they relied upon this statute. We agree with the Supreme Court of California that the plaintiff was not entitled, upon the showing of a mere right to purchase, to demand that its title be adjudged good and valid, and that the defendant had no estate or interest in the land, or that it should be enjoined from asserting any claim adverse to the plaintiff, or that it should recover possession of the land, with the right of ousting the defendant from the improvements which its predecessors had made thereon.

An inceptive right under the statute was an insufficient basis of recovery. A party cannot rest forever on such a right, but is required by the statute, before asserting it against innocent third parties, to take some steps to perfect it. The litigation seems to turn really upon the respective rights of the parties to the waters of San Dimas Creek, and as defendant's predecessors first appropriated them, and the plaintiff shows no superior title, it cannot prevail against the Ranch Company. In view of the uncertain character of the finding that Heckenlively did, shortly after his purchase, enter upon the land and commence the construction of a ditch and tunnel thereon, we are unable to see how the case is affected by the fact that, in

July and August of the same year, the defendant entered upon the land and constructed their forebay or dam, and laid a fourteen-incl. pipe in addition to the twelve-inch pipe which Stowell had laid in 1883. We express no opinion as to the possibility of the plaintiff maintaining a second action upon its patent since obtained, or how far this case may, if at all, operate as *res adjudicata* in that.

There was no error in the decree of the Supreme Court, and it is therefore

*Affirmed.*

MR. JUSTICE MCKENNA took no part in the disposition of this case.