This is an action to quiet title to a quarter-section of land near Del Sur, Los Angeles County, within the overlapping United States land grant to the Atlantic Pacific Railway, made by Congress in 1866 (14 U.S. Stats. 292) in aid of its proposed railroad from the Colorado River to the Pacific Ocean, and the grant made in 1871 (16 U.S. Stats. 573) to the Southern Pacific Railroad Company for its "branch line" from Tehachapi to Yuma via Los Angeles. The latter grant was void as to lands in the overlapping grants, and in 1886 the rights of the former reverted to the United States, and the land was restored to the public domain (24 U.S. Stats. 123; United States v. SouthernPacific R. R. Co., 146 U.S. 570, [36 L.Ed. 1091, 13 Sup. Ct. Rep. 152]; United States v. Colton Marble Lime Co.,146 U.S. 615, [36 L.Ed. 1104, 13 Sup. Ct. Rep. 163]; Southern Pacific R.R. Co. v. United States, 183 U.S. 519, [46 L.Ed. 307, 22 Sup. Ct. Rep. 154]; United States v. Southern PacificR. R. Co., 184 U.S. 49, [46 L.Ed. 425, 22 Sup. Ct. Rep. 285, see, also, Rose's U.S. Notes].) Plaintiff claims under the grant to the Southern Pacific Railroad Company and the defendant under a desert land entry made in 1910. A patent was issued to this company on January 9, 1885, in pursuance of the grant of 1871, for 33,249 acres of land, including the land in controversy. On January 28, 1890, the company by a grant deed conveyed 1,280 acres, including the land in controversy, to Nathan Cole, Jr. The latter, by deed dated February 8, 1890, recorded March 13, 1890, conveyed the land in question to C.A. Sargent. On March 17, 1890, a suit was brought by the United States against the Southern Pacific Railroad Company, Nathan Cole and other grantees and mortgagees of that company, to cancel the patent of January 9, 1885, and other similar patents. *Page 748 
This suit was twice appealed to the supreme court of the United States (Southern Pacific R. R. Co. v. United States,168 U.S. 1, [42 L.Ed. 355, 18 Sup. Ct. Rep. 18]; United States v.Southern Pac. R. Co., 184 U.S. 49, [46 L.Ed. 425, 22 Sup. Ct. Rep. 285, see, also, Rose's U.S. Notes]). The patents were canceled. Plaintiff claims that he is not bound by this cancellation because C.A. Sargent, his predecessor, was not a party to the suit, although he was the record owner, and for the further reason that the final decree excluded the land in controversy. It is true that Sargent was not bound by the decree, or by the cancellation of the patent upon which his title depends, as by an adjudication, but plaintiff's rights, so far as they are affected by the law therein declared, must be determined in accordance therewith. The supreme court of the United States in that case determined the effect of certain acts of Congress, and we must give to them the same construction in this case. That case turned, in part, upon the question as to whether the Atlantic Pacific Railroad had made an effective location of its line of railroad, so as to vest in it the title of the lands along such line in such overlap. [1] So far as this question of fact is concerned it is not open to litigation between the parties here, as we take judicial notice of the invalidity of this grant to the Southern Pacific Railroad Company. (Southern Pacific R. R. Co. v. Painter,113 Cal. 247, [45 P. 320].) And where it appears that the land is within this overlapping grant we have held the patent to the company void. (Owen v. Pomona Land Water Co., 6 Cal. Unrep. 438, [61 P. 472].) This court has frequently taken notice of the invalidity of these patents. (Southern Pac. R. R.Co. v. Wood, 124 Cal. 475, [57 P. 388]; Southern Pac. R. B.Co. v. Lipman, 148 Cal. 480, 491, [83 Pac., 445]; Wilson v.Southern Pac. R. R. Co., 150 Cal. 731, [89 P. 1089].) Plaintiff claims that as he holds under a United States patent to the Southern Pacific Railroad Company, that patent cannot be collaterally attacked. [2] The general rule is that patents cannot be so attacked (United States v. Stone, 69 U.S. (2 Wall.) 525, [17 L.Ed. 765]; Michigan L. L. Co. v. Rust,168 U.S. 589, 593, [42 L.Ed. 591, 18 Sup. Ct. Rep. 208]), but a void patent can be so attacked (Marsh v. Nickols etc. Co.,128 U.S. 605, [32 L.Ed. 538, 9 Sup. Ct. Rep. 168]; Steel v. St.Louis etc. *Page 749 Co., 106 U.S. 447, [27 L.Ed. 226, 1 Sup. Ct. Rep. 389, see, also, Rose's U.S. Notes], cited in Klauber v. Higgins, 117 Cal. 451, 465, [49 P. 466]). That this patent is void and subject to collateral attack is clear, for its invalidity results from the fact that the lands covered thereby had been previously granted by act of Congress to the Atlantic and Pacific Railroad, and the title thereto was in such railroad when the patent was issued (1885) to the Southern Pacific Railroad Company. (Marsh v. Nichols etc. Co., supra; Southern Pac. R. R.Co. v. United States, 168 U.S. 1, 41, [42 L.Ed. 355, 18 Sup. Ct. Rep. 18, see, also, Rose's U.S. Notes].) Plaintiff also claims that even if the patent is invalid, Congress has declared by acts passed in 1891 (26 U.S. Stats. 1093, [U.S. Comp. Stats., sec. 4992]), and in 1896 (29 U.S. Stats. 42, [U.S. Comp. Stats., secs. 4901-4903]), that no suit can be brought to determine such invalidity after March 2, 1901 (five years after the act of March 2, 1896), and that the effect of this limitation is to validate the patent after that date. In this connection appellant calls attention to the decision of the supreme court of the United States in United States v.Chandler-Dunbar Water Power Co., 209 U.S. 447, [52 L. Ed. 881, 28 Sup. Ct. Rep. 579, see, also, Rose's U.S. Notes], in which it was held that the failure of the United States to bring a suit to cancel a void patent results in confirming title in the patentee. The court said: "We can see no reason for doubting that the statute (26 Stats. 1093, c. 561, sec. 8), which is the voice of the United States, had that effect. It is said that the instrument was void and hence was no patent. But the statute presupposes an instrument that might be declared void. When it refers to 'any patent heretofore issued,' it describes the purport and source of the document, not its legal effect. If the act were confined to valid patents it would be almost or quite without use. Leffingwell v. Warren, 2 Black (U.S.), 599," [17 L.Ed. 261, see, also, Rose's U.S. Notes]. In the case at bar, however, the patent relied upon by appellant was attacked by the government in 1890, and in that suit was decreed to be void and canceled. [3] It is evident from the act itself that this five-year period for the bringing of actions to cancel patents was not intended to protect grantees of small portions of the lands patented, where the patent was attacked in time *Page 750 
and decreed invalid. If such grantees are bona fide purchasers they were protected by elaborate provisions of the act by which they could secure title from the government. No case has been called to our attention, and we have discovered none, in which the federal courts have been called upon to determine the effect of the five-year limitation upon the rights of a grantee of a portion of the patented premises where the patent itself has been canceled in an action between the government and the patentee, and the grantee is not made a party to the action in which the patent was canceled. In the case of United States v.Norris, 222 Fed. 14, 19, [137 C. C. A. 552], an action had been commenced against the patentee to cancel the patent within the five-year period. After the expiration of that period the grantee of the patentee was made a party, and it was held that he was protected by the five-year limitation, and that not having been made a party until after the expiration of that period the suit as to him must fail because begun too late. In that case, however, the patent had not been canceled at the time the grantee was made a party and the action failed because the grantee had taken the title to the entire tract. The supreme court of the United States has construed with strictness the five-year limitation upon the power of the government to bring suit to annul a patent. (United States v.New Orleans Pac. Ry. Co. et al., 248 U.S. 507, [63 L.Ed. 388, 39 Sup. Ct. Rep. 175].) The rule is thus stated in UnitedStates v. St. Paul M. M. Ry. Co., 247 U.S. 310, 313, [62 L. Ed. 1130, 38 Sup. Ct. Rep. 525, 526]: "Laying aside other questions raised by the government, we have reached the conclusion that, having regard to the general principle which requires a strict construction to be given to legislation in derogation of the public right, and in view of the legislative history of this particular enactment, the proviso must be given the effect of a curative measure confined to lands theretofore patented, and not granting dispensation for frauds or mistakes thereafter occurring. It will be observed that the proviso is not a mere statute of limitation, but an absolute bar of suits by the United States; not merely of suits to vacate and annul patents, but of suits to recover either the land or the value thereof; not merely in favor of bona fide purchasers, but also of the immediate recipient of an unlawful certification or *Page 751 
patent. The general principle of public policy applicable to all governments, that the public interest should not be prejudiced by the negligence or default of public officers, which underlies the rule of strict construction for statutes of limitation, applies with peculiar force to a statute of this character. (United States v. Knight, 14 Pet. (U.S.) 301, 315, [10 L.Ed. 465]; Gibson v. Chouteau, 13 Wall. 92, 99, [20 L.Ed. 534]; United States v. Thompson, 98 U.S. 486, 489, [25 L.Ed. 194]; Fink v. O'Neil, 106 U.S. 272, 281, [27 L.Ed. 196, 1 Sup. Ct. Rep. 325]; United States v. Nashville, Chattanooga St.Louis Ry. Co., 118 U.S. 120, 125, [30 L.Ed. 81, 6 Sup. Ct. Rep. 1006, see, also, Rose's U.S. Notes]); United States v. Whited Wheless, 246 U.S. 552, [62 L.Ed. 879, 38 Sup. Ct. Rep. 367].)" The purpose of this remedial legislation fixing a limitation within which patents may be attacked and exempting a bona fide
purchaser from the results of the invalidity of the patent is fully accomplished as to plaintiff if he is allowed in this action to prove that he is in fact a bona fide purchaser and thus show title. It remains to be determined whether he is protected as a bona fide purchaser under acts of Congress passed for that purpose. The law of March 2, 1896, confirmed the title of bona fide purchasers from the Railroad Company. (United States v. Southern Pacific R. R. Co., 117 Fed. 544, affirmed Southern Pac. R. Co. v. United States,200 U.S. 341, [50 L.Ed. 507, 26 Sup. Ct. Rep. 296]; United States v.Winona etc. R. R., 165 U.S. 463, 477, [41 L.Ed. 789, 17 Sup. Ct. Rep. 368, see, also, Rose's U.S. Notes].) Under the previous acts of 1887 and 1891, for the protection of a bonafide purchaser, it was necessary for the purchaser to take some affirmative action to secure a patent in order to fully protect himself (San Jose Land Water Co. v. San Jose Ranch Co.,129 Cal. 673, [62 P. 269], affirmed 189 U.S. 177, [47 L.Ed. 765, 23 Sup. Ct. Rep. 487, see, also, Rose's U.S. Notes]), but this was unnecessary under the act of March 2, 1896, supra.
Without some such affirmative action, however, it is necessary for the grantee of the patentee to show that he is a bona fide
purchaser in order to claim the benefit of this remedial legislation. [4] The burden of proof of his good faith is on such purchaser when attacked by the government (Wright-BlodgettCo. v. United States, 236 U.S. 397, [59 L.Ed. 637, 35 Sup. Ct. Rep. 339]), or by *Page 752 
a private party. (Great Northern Ry. Co. v. Hower,236 U.S. 702, [59 L.Ed. 798, 35 Sup. Ct. Rep. 465, see, also, Rose's U.S. Notes]; Code Civ. Proc., secs. 1869, 2061, subd. 5.)
Is the plaintiff shown to be a bona fide purchaser or grantee thereof? By mesne conveyances from C.A. Sargent title was in Susana and Isabel. Schell from and after 1892. If they werebona fide purchasers their title was confirmed by Congress the first Monday in March, 1896 (March 2d). The land was assessed for state and county taxes for the year 1896, which became a lien on the first Monday in March of that year. Previous thereto it had not been taxable. (People v. Shearer, 30 Cal. 645; San Jose Land Water Co., v. San Jose Ranch Co., supra.) The land was sold to the state for these taxes (1897) and deeded to the state July 3, 1902; and sold by the state to C.W. Eastman February 21, 1912; and by the latter to the plaintiff July 31, 1912. The plaintiff on June 13, 1913, secured a decree quieting his title against Susana and Isabel Schell, in whom by mesne conveyances the title of the Railroad Company had vested and still remained subject to such tax deed. Defendants' vendors made a desert land entry of the land at the United. States land office at Los Angeles on June 2, 1910, and thereafter proof of annual work was filed. Margaret G. McCartney assigned her rights to the defendant November 8, 1913. He has made final proof. Plaintiff claims as a bona fide
purchaser of the tax title. [5] Although such title was purchased for a valuable consideration he cannot be considered a bona fide purchaser within the meaning of the act of 1896 for two reasons, first, at the time of his purchase the United States land office records showed a valid desert land entry thereon; second, at that time the patent under which he claims had been declared null and void and the decree was of record in the office of the clerk of the United States district court of Los Angeles. Plaintiff visited the land and found no evidence of occupation, but this did not make him a bona fide purchaser. His rights, then, must depend upon the decree to quiet title, in which, in effect, he secured the title of the Schells, but not by a bona fide purchase. If they had title plaintiff should prevail in this case. To establish this it was necessary for plaintiff to prove that they or their predecessors were purchasers *Page 753 
in good faith. The only evidence on that subject is the recitals of consideration in the various conveyances and the fact that in the suit to invalidate the patent Nathan Cole, Jr., was held to be a bona fide purchaser as to certain other land in the grant to him. [6] Recitals in these conveyances are not competent evidence against third persons not parties or privies thereto. (Simmons Creek Coal Co. v. Doran,142 U.S. 417, 437, [35 L.Ed. 1063, 12 Sup. Ct. Rep. 239, see, also, Rose's U.S. Notes]; Long v. Dollarhide, 24 Cal. 218; 4 Encyclopedia of Evidence, 188, sec. 12; 22 C. J. 859, sec. 1028.) The decree in favor of Nathan Cole, Jr., declaring him to be a bona fide purchaser of land other than that in his deed to Sargent, plaintiff's predecessor, has no tendency to prove he was such purchaser as to other land. Moreover, the validity of his title to the land involved here was expressly reserved by the decision. Plaintiff relies on certain sections of our code (Code Civ. Proc., secs. 1962, subd. 2; Civ. Code, secs. 1614, 1615; sec, also, Code Civ. Proc., sec. 1963, subd. 39), but these sections merely relate to the sufficiency of the consideration to sustain the deed. It follows that plaintiff failed in an essential particular to establish his title. Appellant also claims title because the United States, having acquired title to the lands by forfeiture in 1886, the title passed under its previous patent of 1885 to the Southern Pacific Railroad under the rule of our Civil Code, to the effect that where a grantor acquires title subsequent to his grant it passes to the grantee. (Civ. Code, sec. 1106) [7] This rule does not apply to a government patent. If so, all the decisions in the litigation between the United States and the Southern Pacific Railroad Company were erroneous.
The judgment is affirmed.
Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.