# GREAT NORTHERN RAILWAY COMPANY v. HOWER.

**ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.**

No. 88.    Submitted November 11, 1914.—Decided March 22, 1915.

*Bona fide* purchase is an affirmative defense which the grantee must set up in order to defeat the claim of one seeking to have a trust declared in lands patented, if the bill is otherwise sufficient.

Rev. Stat., § 2291, is specific in its requirements that in order to obtain a patent for a homestead, the applicant must have actually resided upon or cultivated the same for a term of five years.

While the law deals tenderly with one going in good faith on the public lands, with a view of making a home thereon, the right is a statutory one, and, in such a case as this, it is essential to show compliance with the statute as a prerequisite to obtaining a patent.

Although acting in good faith, settlement upon land other than that included in the entry is not sufficient; and in this case so *held* as to an entry for one quarter-section where the entryman, through mistake, built his home on another quarter-section and at a point about one-quarter of a mile from the land entered, notwithstanding he did make a trail and build a stable on the land entered.

69 Washington, 380, reversed.

THE facts, which involve the construction of Rev. Stat., § 2291, and the necessity of the homesteader making improvements on the land entered, are stated in the opinion.

*Mr. E. C. Lindley, Mr. Thomas R. Benton, Mr. F. V. Brown* and *Mr. F. G. Dorety* for plaintiff in error.

*Mr. Eugene G. Kremer* and *Mr. J. A. Coleman* for defendants in error:

In *Moore* v. *Robbins,* 96 U. S. 530, 535; *Baldwin* v. *Stark,* 107 U. S. 463; *Bohall* v. *Dilla,* 114 U. S. 47; *Lee* v. *Johnson,* 116 U. S. 48; *Gonzales* v. *French,* 164 U. S. 342, relied on by plaintiff in error, the patent of the United States was supported against an attempt to set it aside,

and in none of these cases had the right of a *bona fide* purchaser intervened.

In this case, the rights of *bona fide* purchasers have intervened. Defendants in error are *bona fide* purchasers for value and without notice, and their rights will be protected by this court. *United States* v. *Burlington*, 98 U. S. 334; *Colorado Coal Co.* v. *United States*, 123 U. S. 307; *United States* v. *Cal. & Ore. Land Co.*, 148 U. S. 31.

There is no disputed question of fact to be considered by the court. All matters involved have been the subject of investigation by the Department. The only claim insisted upon is that there was a mistake of law by the Department. Carter could not, as matter of fact, in any new suit dispute or controvert the facts found in this suit, though as matter of law he might have the right to do so.

In the absence of fraud or mistake, the decisions of the Land Department upon questions of fact in all matters properly before it, must be regarded as conclusive, and where a patent has issued and transfers have been made to others, the rights so acquired can be overturned only upon the clearest evidence, but where the doubt rests upon a mixed question of law and of fact, and when the court cannot so separate them as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter, is conclusive. *Marquez* v. *Frisbie*, 101 U. S. 800; *Shepley* v. *Cowan*, 91 U. S. 331; *Lee* v. *Johnson*, 116 U. S. 49.

The prevailing and long continued construction of the act by the Land Department is entitled to great weight in determining the questions raised. *Hewitt* v. *Schultz*, 180 U. S. 139; *Moore* v. *Cormove*, 180 U. S. 167.

MR. JUSTICE DAY delivered the opinion of the court.

The Great Northern Railway Company filed its amended complaint against James A. Hower, individually and as

Trustee, Anna H. Hower, his wife, Nonpareil Consolidated Copper Company, Nicholas H. Rudebeck, and James McCreery Realty Company, in the Superior Court of the State of Washington, in and for the county of Snohomish, seeking to establish title to the northeast quarter of Section 2, Township 27 north, Range 10 east, Willamette Meridian, in said county and State. Defendants appeared and demurred upon the ground, among others, that the amended complaint did not state facts sufficient to constitute a cause of action. The Superior Court sustained the demurrer, and upon appeal to the Supreme Court of the State of Washington, judgment on the demurrer dismissing the suit was affirmed (69 Washington, 380), and the case was brought here.

Various paragraphs of the bill allege the selection of the lands in controversy by the complainant's grantor, the St. Paul, Minneapolis & Manitoba Railway Company, under the provisions of the act of Congress of August 5, 1892 (c. 382, 27 Stat. 390), which selection was made on March 24, 1894. Other paragraphs of the bill allege the filing of an application by one Melvin J. Carter on April 18, 1899, in the District Land Office to enter the northeast quarter of Section 2, Township 27 north, Range 10 east, under the homestead laws of the United States, Carter claiming that he had settled on the land December 1, 1893. The complaint recites the controversy between the Railway Company and Carter before the district land officers, and the taking of testimony, which, it is alleged, showed that Carter on September 19, 1893, purchased the improvements of a former settler upon a tract of unsurveyed land on the left bank of the north fork of the Skykomish River a short distance below the mouth of a tributary of said river known as Trout Creek; that he thereupon established a residence in the cabin of the former settler, and commenced the construction of a new dwelling house which he finished in the spring of 1894; that he moved his

family into this dwelling house and had continued to, reside therein and on said land with his family to the time of said hearing; that his improvements consisted of the dwelling house and a small clearing in which he set out trees and shrubbery and raised vegetables from year to year. It is alleged that the evidence taken at the hearing further showed that Carter's improvements were all situated on the left bank of the north fork of the Skykomish River, about two or three hundred feet from said river and about one-half mile below the mouth of said Trout Creek, and not upon the land applied for by Carter under the homestead law; that on the evidence alleged, the register and receiver, on August 28, 1903, held and decided that Carter had duly settled upon the land claimed by him during the month of September, 1893, and had continued to reside upon, improve and cultivate said land to the time of said hearing on June 1, 1903, and that he should be allowed to enter the land applied for under the homestead law and that the railway company's selection thereof should be cancelled.

It was further charged that upon appeal to the Commissioner of the General Land Office, the Railway Company alleged among other things that the evidence showed that the dwelling house and other improvements of Carter were not on the land selected by said railway company and applied for by Carter, but were and at all times had been situated more than three-eighths of a mile from said land; that the Commissioner of the General Land Office, on March 23, 1904, held and decided that said Carter had settled upon the land upon which his improvements were made in the fall of 1893, and that he had commenced his residence thereon with his family in the spring of 1894 and had continued to reside upon and improve same. The Commissioner further held that the evidence taken tended to show that Carter's improvements were all situated on the Northwest Quarter of

Section 2, Township 27 north, Range 10 east, and not on
the Northeast Quarter of said Section 2, and ordered a
further hearing.

It was alleged that on the further hearing before the
register and receiver of the Seattle Land Office on Decem-
ber 16, 1904, the evidence conclusively showed that the
improvements, including the dwelling house and residence
of Carter, were all situated on Lot 2 of said Section 2,
Township 27 north, Range 10 east; that said Lot 2 is
located in and is a part of the Northwest Quarter of the
Northwest Quarter of said section, and that the east line
of said lot is located a quarter of a mile west of the west
line of the Northeast Quarter of Section 2; that the
evidence taken at the hearing further showed that at some
time prior to said hearing Carter had constructed or taken
part in the construction of a trail up Trout Creek and
extending over and across a part of the Northeast Quarter
of Section 2; that about the year 1899 there had been
constructed on the northwesterly part of the Northeast
Quarter of Section 2 a small stable or barn and that
Carter had at times used said stable or barn for storage
purposes; and that upon the evidence taken at said re-
hearing the register and receiver of said Seattle Land
Office held and decided, on January 21, 1905, that all of
said Carter's improvements were located on said Lot 2 of
said Section 2.

The complaint further alleged that on the thirtieth day
of June, 1905, the Commissioner of the General Land Of-
fice, on the evidence taken at the rehearing, held and de-
cided that on September 19, 1893, Melvin J. Carter pur-
chased the claim, cabin and improvements of a former
settler; that he built for himself and family a new cabin on
the claim purchased; that he lived in the cabin and culti-
vated a small tract of land on the claim; that about a year
after his settlement Carter constructed trails across Sec-
tion 2 and up Trout Creek for the purpose of getting to dif-

ferent places on his claim; that he also built a barn or stable
and used it for storing supplies; that a part of the trails and
the stable or barn were on the Northeast Quarter of Sec-
tion 2, and that the dwelling house and cultivated land
were all on the Northwest Quarter of said Section 2 about
one-fourth of a mile west of the west line of the Northeast
Quarter of said section; that notwithstanding that the
evidence produced at said rehearing failed to show that
Carter ever resided upon, improved or cultivated any part
of the Northeast Quarter of Section 2, and did conclusively
show that Carter's dwelling house and cultivated land
and improvements, except only said trails and stable or
barn, which were constructed after the railway company's
selection of said land, were situated more than one-fourth
of a mile from Northeast Quarter and the Commissioner of
the General Land Office found such to be the facts, said
Commissioner wrongfully and unlawfully, it is alleged,
and in fraud of the railway company's rights to the land
and to complete its selection thereof and to receive the
patent of the United States therefor, held, as a matter of
law, that Carter's residence was established and main-
tained in good faith and in the belief that his dwelling
house was upon the land embraced in his homestead
application and that such residence, taken in connection
with the subsequent construction of trails and the stable or
barn on the Northeast Quarter of said Section 2, was a
constructive residence on said Northeast Quarter, and that
said Carter should be permitted to make homestead entry
of said land and that the selection thereof by the St. Paul,
Minneapolis & Manitoba Railway Company should be
canceled.

The complaint further alleged that the Railway Com-
pany appealed to the Secretary of the Interior from the
decision of the Commissioner of the General Land Office,
alleging that Carter's dwelling house and improvements
were situated more than a quarter of a mile from the

Northeast Quarter; that he had never resided upon, occupied, cultivated or in any manner improved the land embraced in his homestead application; and that his acts did not constitute a settlement upon said Northeast Quarter within the meaning of the homestead law; that on the twenty-third day of November, 1905, the Secretary of the Interior passing on said appeal, held the facts in the case to be as found by the Commissioner in his decision, and on the facts, wrongfully and in fraud of the right of the Railway Company to said land, held and decided as a matter of law that as Carter was shown to have been a *bona fide* homestead settler upon unsurveyed land at the time the Railway Company made selection of the Northeast Quarter of said Section 2 and subsequently complied with the law as to residence and improvements, he was constructively a settler upon said Northeast Quarter, and that his application to enter the land under the homestead law should be allowed and the selection thereof by the Railway Company canceled.

It was further averred that the Railway Company's selection of the Northeast Quarter of Section 2 was canceled, pursuant to the decision of the Secretary of the Interior, and that afterwards, on the sixteenth day of March, 1906, said Melvin J. Carter was permitted to make, and did make, homestead entry on the Northeast Quarter of Section 2, and that on May 16, 1906, he made the final proofs required, and received a final entry certificate for the land; and that thereafter, on the eighth day of March, 1907, patent of the United States was issued to Carter, conveying to him the legal title to said lands.

It is also averred that the decisions of the Commissioner of the General Land Office and the Secretary of the Interior, and the cancellation of the Railway Company's selection, were wrongfully and erroneously made through a mistake of law, in this, that it was in and by said decisions held that the settlement and residence of Carter

upon a tract of land situated one-fourth of a mile distant from the land sought to be entered by him was constructively, and within the meaning of the homestead law of the United States, a settlement upon the land last mentioned.

It was further averred, that on the ninth day of July, 1906, prior to the issuing of patent of the United States to Carter, said Melvin J. Carter and Clara Carter, his wife, granted to the defendant, James A. Hower, as Trustee, their right, title and interest in said Northeast Quarter of Section 2, Township 27 north, Range 10, east, and that the beneficiaries of the trust created by the deed, or the terms and conditions thereof, are not set forth in the deed, and plaintiff has no knowledge or information concerning the beneficiaries or the terms and conditions of the trust; and it was further averred that the defendant Nonpareil Consolidated Copper Company claims an interest or estate in said Section 2 adverse to plaintiff, but that plaintiff has no knowledge or information concerning the nature or extent of the interest so claimed. A like allegation is made as to the defendants Nicholas H. Rudebeck and James McCreery Realty Company. It is averred that the interest of the said defendants, if any they have, is subsequent, subordinate and inferior to the claim of the plaintiff.

The prayer is that the plaintiff be adjudged the owner of the title, and the defendants decreed and required to convey the same to it.

The Supreme Court of Washington affirmed the judgment of the lower court, sustaining the demurrer, upon the ground that the decisions of the Land Department should be followed, and that Carter's homestead entry was duly and properly approved. Apart from this ground of decision, it is argued by the defendants in error that the judgment was properly sustained in view of the want of allegation that the defendants in error—purchasers, so far as

appears, in good faith, and without notice of the claims
of the plaintiff in error—had knowledge or notice of the
plaintiff's claims, or such notice as the law requires as to
the alleged invalidity of the title as would deprive them
of the rights of *bona fide* purchasers.

It will be noticed that the allegations of the bill are that
the deed to Hower, as Trustee, was made on July 6, 1906,
before the patents issued on the eighth day of March, 1907,
to Carter, but after the hearings and decisions to which we
have referred, and after May 6, 1906, when Carter made
the final proofs of settlement and cultivation required by
§ 2291, Rev. Stat., and after he had received final entry
certificate for the lands upon that date.

Under these circumstances, it is said the grantee had
such title as might be conveyed, notwithstanding the pat-
ent had not issued, and the rights of a *bona fide* purchaser
will be protected. *United States* v. *Clark*, 200 U. S. 601.

It is the contention of the defendant in error that it
appearing in the complaint that the grantee had complied
with the requirements of the law and everything was com-
plete except the issuance of the patent, it was necessary
to further aver that the purchaser had knowledge or no-
tice of the supposed mistakes or wrongs charged in order
to deprive him of the benefit which inheres in the position
of a *bona fide* purchaser. And this it is contended is the
effect of *United States* v. *Clark*, 200 U. S. *supra*. But the
position of a *bona fide* purchaser is not to be assumed from
the allegations of the complaint, which do no more than
state the several transfers without any allegation showing
affirmatively that the defendants are *bona fide* purchasers
for value, in which event only could this defense be suc-
cessfully made by demurrer to the complaint. *Bona fide*
purchase is an affirmative defense, which the grantee must
set up in order to defeat the right of the railroad company
to have a trust declared in the lands in question, if the bill
is otherwise sufficient for that purpose. This matter was

directly involved and considered in *Wright, Blodgett Company, Limited,* v. *United States,* decided February 23, 1915, *ante,* p. 397, and it is only necessary in this connection to refer to that case.

The question then is, was there sufficient compliance with the homestead law to entitle Carter to the benefit thereof? It is not contended that the courts may refuse to follow the conclusions of the Land Office, based upon testimony as to matters of fact, but the insistence is that there is here such a clear mistake of law upon the facts found as to entitle the complainant to the relief sought. As it is stipulated in the decision on the demurrer that the findings of the officers of the Interior Department may be looked to, they must be had in mind in addition to the facts already recited from the complaint. Upon the appeal to the Commissioner of the Land Office from the finding of the Register and Receiver, that official held:

"I, therefore, have no doubt of the good faith of Carter in his present application, and he now offers to amend his application so as to include the land which the Government finally determines his improvements are placed upon, and to drop from either the eastern or the southern boundary of his claim sufficient land to enable him to include the actual tracts upon which his improvements are located; provided the Department finally holds that his homestead improvements are not upon the N. E. ¼.

"The patenting of Lot 2 to E. B. Carter and Lot 1 which lies between him and N. E. ¼ to the railway company, place them beyond the jurisdiction of this office, and the suggested adjustment cannot be had, and the only relief that can be extended to him is to award him the N. E. ¼, upon the principle of constructive residence, which, I think, may in all equity and justice be applied in his case; he made some improvements on the N. E. ¼, believed he was residing on that quarter and lived there six years in that belief, and made application for that

tract, so believing; therefore under the decisions of the Department in *Kendrick* v. *Doyle*, 12 L. D. 67; *Noe* v. *Tipton*, 14 L. D. 447; *Staples* v. *Richardson*, 16 L. D. 248, and others, I rule that Carter's residence in good faith in a house believed to be upon the land, covered by his application is a constructive residence on such land, and that since said residence antedates the selection of the railroad company he had the better right thereto.

"I therefore hold the company's selection of the said N. E. ¼ for rejection, subject to appeal, with a view to permitting Melvin J. Carter to perfect homestead entry thereof should this decision become final."

Upon appeal to the Secretary of the Interior, it was decided, among other things, as follows:

"It is evident from the testimony and circumstances in the case that when Melvin J. Carter purchased the cabin and improvements of Doolin and built the new house into which he moved with his family, the land being then unsurveyed, he intended to claim land extending to the east of said improvements. This is shown from the fact he built the barn, made the trails and posted notice of his claim over a quarter of a mile to the east, as shown in the case. It does not appear why he did not apply for Lot 1, or fractional N. E. ¼ of N. W. ¼, situated between his house and the land applied for. It does appear, however, that several surveys of the land, either public or private, had been made, and that the situation was confusing as to the lines and stakes even to those accustomed to looking up lines and corners. As Carter tendered his homestead application directly after the filing of the plat, presumably he still believed that his house was located on the N. E. ¼.

"As he is shown to have been a *bona fide* homestead settler upon unsurveyed land at the time the railway company made selection thereof, and subsequently has made a good compliance with the law as to residence and improvements, the Department is of the opinion that his

application for the tract in question should be allowed. As the railway company made selection of the entire section, it loses no more land than it would if Carter had applied for said lot 1 with sufficient in the N. E. ¼ to make 160 acres.

"Your office decision holding in favor of Carter is affirmed and upon his perfecting his application for said N. E. ¼ of Sec. 2, T. 27, N. R. 10 E., the railway company's selection thereof will be canceled."

The statute of the United States (Rev. Stat., § 2291) is specific in its requirements that in order to obtain a patent for a homestead the applicant must have actually resided upon or cultivated the same for a term of five years succeeding the filing of the claim, etc.[1]

The question therefore is, was an actual residence within the meaning of the statute sufficiently shown to comply with these provisions? It is true, as the Supreme Court of Washington stated in its opinion in this case, referring to the opinion of this court in *Ard* v. *Brandon*, 156 U. S. 537, 543, "the law deals tenderly with one who, in good faith, goes upon the public lands, with a view of making a home thereon." This is as it should be, and the courts have shown a commendable disposition to uphold one who has acted in good faith in entering upon the public lands for this purpose. Nevertheless, the right is a statutory one, and in this case it was essential to show actual residence upon the land as a prerequisite to the granting of a patent and obtaining title to the same.

Conceding that Carter acted in entire good faith, and that he meant to comply with the law, it is nevertheless the fact that his settlement was upon, and the land cultivated was in, a different quarter-section from that which

---

[1] Since this case arose the statute has been amended so as to require a habitable house upon the land, and actual residence and cultivation for the term of three years. Act of June 6, 1912, c. 153, 37 Stat. 123; U. S. Compiled Stats., V. 2, § 4532.

he undertook to enter, and the quarter which he contends
for was separated from the one which he occupied by a
forty-acre tract. It is true that some time during his
occupancy a trail was laid out, and a small stable con-
structed on the northeast quarter. But the fact remains
that his residence and improvements by way of cultiva-
tion were upon a quarter-section entirely separate and
apart from the one to which title is now claimed. It seems
to us to be going too far to say that, because of the trail
to the northeast quarter and the small stable thereon, and
the notices posted upon it, there was a constructive resi-
dence on that quarter, although the actual residence was
upon the other quarter.

We have been cited to no cases in the Land Department
which go so far as is required in this instance in order to
support title. We have been unable to find anything in
our own decisions which would sanction such liberal treat-
ment of the statutory requirement as to residence.

In *Talkington's Heirs* v. *Hempfling*, 2 L. D. 46, the house
of the entryman was by mistake built thirty yards out-
side of the lines of his claim, and was occupied in good
faith in the belief that it was on the land claimed. In
*In re Lewis C. Huling*, 10 L. D. 83, the house was built
just across the line in the belief that it was actually inside
the limits and upon the land claimed by the entryman. In
*Kendrick* v. *Doyle*, 12 L. D. 67, the entryman was honestly
mistaken as to the limits of his claim, owing to conflicting
surveys, and his house was built in a corner where the
boundary line admittedly was in doubt, but the correct
survey showed the house to be a little outside the line.
In *Staples* v. *Richardson*, 16 L. D. 248, the entryman
discovered that he had built his house outside his limits,
and razed it and built another house inside the supposed
limits, but found that house to be outside, and built a
third house, this time within the line limits. In *Keogle*
v. *Griffith*, 13 L. D. 7, the claimant's first dwelling was

about forty rods from his land boundary. Upon dis-
covering the mistake he built another house upon the
land entered. In *Lindsay* v. *Hawes*, 2 Black, 554, the
claimant's dwelling house was on the boundary line of the
land claimed. A similar situation existed in *Silver* v.
*Ladd*, 7 Wall. 219. In each of these cases the residence
was held sufficient to satisfy the requirement of the
statute. On the other hand, both the Department and
this court have held in a number of cases, that residence
upon one tract of land will not support a preëmption
or homestead claim to another and distinct tract, even
where the claimant has made substantial improvements
upon the latter. In *Guyton* v. *Prince*, 2 L. D. 143, the
claimant had purchased from a railroad company a tract
which adjoined that of his homestead entry; two cabins
had been built upon the homestead land, one by Prince,
besides a stable, smoke-house and other buildings. The
land was cultivated after entry, but at no time did the
claimant reside upon the land, contenting himself with a
few stays of a week or two at a time, and living in his
dwelling upon the land purchased from the railroad com-
pany. His claim to homestead was denied because of his
failure to reside upon the land claimed. The case of
*Thomas D. Harten*, 10 L. D. 130, is somewhat similar, the
claimant having purchased a possessory right to a tract
of land embracing the homestead attempted to be claimed,
and resided on the tract purchased, intending thereby
to claim the entire tract. When the land was surveyed,
his house was found to be 200 feet distant from the line
of the homestead, while his garden and spring, as well as
some out-buildings, were on the homestead tract. He
cultivated the homestead tract, and shortly after his
homestead entry built a house upon the homestead tract,
residing since his entry thereon one night each month,
hoping thus to establish his residence. The Department
held this to be no residence, however, and denied his

claim. In *re Edson O. Parker*, 8 L. D. 547, Parker made
scrip location of unsurveyed land, and after the survey
was made, made further entry under the homestead
laws for the remaining three-quarters of the section. His
residence and most of his improvements were on the scrip
claim, until he made his homestead entry, when he re-
moved upon the lands embraced in said entry. It was
held that he was not a settler on the homestead land until
he moved his residence thereon. In the case of *Warren
Bowen*, 41 L. D. 424, the settler had made an entry for
a quarter-section of some surveyed lands, and upon pre-
senting his homestead proof he included the adjacent
quarter of some unsurveyed lands. His dwelling house
was situated on the latter tract, where he had resided and
had cultivated some five acres in the adjacent tract. His
title to the unsurveyed lands was denied for reasons not
necessary to be set forth here, and as to the surveyed
tract his claim was denied because of lack of residence
upon the proper section. In *Ferguson* v. *McLaughlin*,
96 U. S. 174, it was held that under § 6 of the act of
March 3, 1853, c. 145, 10 Stat. 244, a settler upon un-
surveyed public lands in California has no valid claim
to preëmpt a quarter-section, or any part thereof included
in his settlement, unless it appears by the Government
surveys, when the same are made and filed in the local
land office, that his dwelling-house was on that quarter-
section.

In *St. Paul &c. Ry.* v. *Donohue*, 210 U. S. 21, this court
summarized the requisites concerning preëmptions and
homesteads essential to the acquirement of the rights
intended by the statute, and said, at page 33:

"As a result of this review of the legislation concerning
preëmptions and homesteads and of the settled interpre-
tation continuously given to the same, we think there is
no merit in the proposition that a homesteader who initi-
ates a right as to either surveyed or unsurveyed land, and

complies with the legal regulations, may not, when he enters the land, embrace in his claim land in contiguous quarter-sections, if he does not exceed the quantity allowed by law, and provided that his improvements are upon some portion of the tract and that he does such acts as put the public upon notice of the extent of his claim."

In this case it appears that the residence was not upon any part of the tract claimed by the homesteader; nor was the residence upon a contiguous tract of land, but was entirely separate and apart from the land claimed. Under these circumstances we are constrained to the conclusion that the complaint, upon its face, made a case entitling the plaintiff in error to the relief sought. As we have said, the rights of a *bona fide* purchaser, if such exist in this case, must be affirmatively set up by answer and sustained by proof. In the brief for the defendants in error a contention is made that the plaintiff is estopped from asserting a claim to the quarter-section in question by reason of having wrongfully obtained a patent for the land actually settled upon by Carter and having failed or refused to surrender that tract when the contest was pending in the land office, but it is enough to say of this that the facts upon which the contention is rested are not sufficiently disclosed in the complaint to require or justify its consideration at this time. If there be facts warranting such a contention they should be distinctly set forth in the answer and appropriately proved.

We think the court below erred in sustaining the demurrer to the complaint, and it follows that its judgment must be reversed, and the case remanded to the Supreme Court of Washington for further proceedings not inconsistent with this opinion.

*Reversed.*