### KITCHEN et al. v. CANAVAN.[*]

Circuit Court of Appeals, Eighth Circuit.
October 21, 1927.

No. 7824.

1. **Corporations** ⊂⊃542(3)—Conveyance of insolvent company's property and reconveyance to president and secretary held fraudulent as to creditor who had originally conveyed to company.

Conveyance by president and secretary of insolvent company to brother of president and brother's wife, purporting to convey good title in name of and on behalf of company, and reconveyance to president and secretary, *held* fraudulent as to creditor of company who had previously conveyed such property to it.

2. **Corporations** ⊂⊃542(3)—When title of grantees is denied, conveyance of insolvent company's property and reconveyance to president and secretary must be explained.

Conveyance of insolvent company's property, made by president and secretary to president's brother and latter's wife, and reconveyance to president and secretary of company, being transaction between members of same family, its good faith must be explained, when title of grantees is denied.

3. **Vendor and purchaser** ⊂⊃240—In quiet title action, claim of good-faith purchaser without notice for value must be pleaded and established by claimant.

In action to quiet title, claim of good-faith purchaser without notice and for value is affirmative defense, to be pleaded and established by claimant.

4. **Corporations** ⊂⊃542(3)—Corporation's officers occupied fiduciary relation toward creditor, preventing them from appropriating company's assets or otherwise diverting them.

Where corporation was insolvent, officers of company occupied fiduciary relation toward creditor, which prevented them from appropriating company's assets to themselves, or otherwise diverting them from creditor.

5. **Corporations** ⊂⊃547(4)—Creditor of insolvent corporation, with equitable right to have land applied in payment of claim, held entitled to land as against corporation's secretary, claiming under fraudulent conveyance.

In action to quiet title, creditor of corporation, who had equitable right to have land applied in payment of claim, *held* entitled thereto as against secretary of corporation, acquiring land by fraudulent conveyance or claiming under lien acquired after knowledge of fraud against creditor.

[*]Rehearing denied January 12, 1928.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit to quiet title by Bertha Canavan against Peter Kitchen and another. Decree for complainant, and defendants appeal. Reversed, with directions.

E. W. Dobson, of Albuquerque, N. M., for appellants.

H. B. Jamison and Sam G. Bratton, both of Albuquerque, N. M., for appellee.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. This suit was brought by appellee to quiet her claimed title to 159 acres of land in McKinley county, New Mexico. In the first count of her bill she alleged that she is the owner in fee simple and in possession of the land and that the appellants make some claim thereto. She alleged that they had no interest and asked that they be required to set forth the nature of their claims. In the second count she alleged that she is the assignee for value of a judgment recovered April 19, 1919, by Alfred Ruiz and Frank W. Clancy against Stephen Canavan (her husband), in the sum of $2,214.05; that a transcript of said judgment was filed for record with the county clerk of McKinley county on April 24, 1919, and became a lien on all of the property of Stephen Canavan in that county; that thereafter on January 19, 1920, the land was conveyed to her and her husband by warranty deed of Christopher and Elizabeth Canavan, and said judgment thereupon became a lien on the undivided one-half interest of her husband in said property; that defendants, or one of them, have acquired the title of her husband to said undivided half-interest subject to said judgment; that she became assignee of said judgment on April 15, 1921, and she prayed in the second count that her title to an undivided half-interest in the property be quieted and that the judgment lien be foreclosed upon the undivided half previously belonging to her husband and that said lien be adjudged superior to any lien, title or interest held by the defendants or either of them. The answer, barring a few formal admissions, is a denial of any interest of appellee in the land. The court entered a decree in her favor as prayed in the second count.

Appellant Kitchen was the owner of the 159 acres in 1910. On July 15th of that year he conveyed it to Rocky Cliff Coal Company, a corporation. That deed was not filed for record until September 20, 1917. Some time in 1910 the Caledonian Coal Company recovered a judgment against the Rocky Cliff Company and Stephen Canavan, from which they took an appeal to the state Supreme Court. Canavan was president of the defendant company, and at his solicitation appellant Kitchen signed the supersedeas bond. The judgment was affirmed and Kitchen was required to pay it because of his obligation on the bond. He brought an action in August, 1918, against the Rocky Cliff Company and Canavan (who was not served) on their liability over to him and recovered judgment against the company for $7,819.73 in February, 1921. Kitchen, in an effort to secure himself after paying the judgment, deeded the land to appellant Dobson in November, 1914, and that deed was filed for record in the recorder's office of McKinley county on the 19th of that month. The warranty deed which he had given to the Rocky Cliff Company had not then been filed for record. In 1918 Dobson brought a suit in the state district court for McKinley county against the Rocky Cliff Company, Stephen Canavan, Christopher Canavan and Elizabeth Canavan, to quiet the title which Kitchen had conveyed to him in 1914. Kitchen intervened as a party in that cause and after setting up the facts that have been stated in reference to his becoming surety on the supersedeas bond in the action brought by the Caledonian Coal Company, his payment of that judgment in 1912 and his recovery over against the Rocky Cliff Company, he alleged that his judgment against the latter company remained wholly unpaid; that on July 15, 1910, he conveyed the land to the Rocky Cliff Company; that it kept his deed to it from record until September 20, 1917; that shortly before he paid the judgment in favor of the Caledonian Company Stephen Canavan was adjudged to be in contempt of an order of the district court for McKinley county, in failing to discharge a judgment that his then wife, Kate Canavan, had recovered against him and because thereof he was committed to jail; that Kitchen visited Canavan while he was in jail and requested and demanded that the Rocky Cliff Company either reconvey the land in question to him or turn the unrecorded deed over to some person to be held in trust until the Rocky Cliff Company or Canavan should reimburse him on account of his having paid the judgment in favor of the Caledonian Company; that Canavan promised on two occasions that

he would get the deed, which he stated was among his papers in El Paso, Texas, and turn it over to appellant Dobson to hold until the Rocky Cliff Company and Canavan had reimbursed Kitchen; that Canavan did not purge himself of said contempt, but remained in the county jail for the full period of two years; that he failed to deliver the said deed which Kitchen had made, either to Kitchen or to Dobson, as he had promised to do; that after Canavan was released from jail he immediately left the state of New Mexico and went to El Paso, Texas, where he has since resided; that Kitchen made repeated demands that Canavan as president of the company return the deed or cause the property to be reconveyed to him as security and in trust until he should be reimbursed on account of his payment of said judgment; that Kitchen waited for over eight months after Canavan had been out of jail, expecting him to make good his promise, but he failed to do so and believing that the Rocky Cliff Company and Canavan as its chief officer were endeavoring to defraud him and prevent him from collecting the amount he had paid in discharge of the Caledonian Company's judgment, and in order to prevent Canavan and the Rocky Cliff Company from accomplishing that purpose, he executed and delivered a deed conveying the property to E. W. Dobson on November 19, 1914, which was placed of record that day; that the deed to Dobson was for the purpose of holding the title to the property in trust until Kitchen might be reimbursed; that the land in controversy constituted all of the assets of the Rocky Cliff Company and that it and Canavan were insolvent; that Canavan caused the deed which Kitchen made to the Rocky Cliff Company to be withheld from record as a part of the fraudulent scheme in preventing Kitchen from collecting what was due him and that it was finally taken to the county seat of McKinley county and placed of record by appellee Bertha Canavan, who was then the wife of Stephen Canavan; that Stephen Canavan was the president of the Rocky Cliff Company and his wife, appellee here, was its secretary; that when he paid the judgment in favor of the Caledonian Company it assigned said judgment to him; that he brought his action against the Rocky Cliff Company and Canavan in August, 1918, to recover what he had paid and on August 4, 1919, while that action was pending the Rocky Cliff Company deeded the land to Christopher Canavan and Elizabeth, his wife, the former being the brother of Stephen, for the purpose of preventing Kitchen in the collection of his judgment, said deed being signed on behalf of the Rocky Cliff Company by Stephen Canavan as president and Bertha Canavan as secretary, that said deed recited a consideration of $2,500, but in fact neither Christopher nor Elizabeth Canavan paid anything for said conveyance and received the same with full knowledge of the facts that have been stated, and of the pendency of the suit brought by Kitchen to recover against the Rocky Cliff Company and Stephen Canavan, and with full knowledge of the pendency of the suit brought by E. W. Dobson against said Rocky Cliff Company, Stephen Canavan, Christopher Canavan and Elizabeth Canavan, and that neither Christopher nor Elizabeth Canavan were purchasers for a valuable consideration but that the conveyance made to them was for the express purpose of defrauding and preventing Kitchen from reaching said property in satisfaction of his claim. In his petition in intervention Kitchen prayed that Dobson be declared to hold title to the property in trust and that his judgment for $7,819.73 be declared a lien thereon and the land sold for the purpose of satisfying his claim; that the pretended deed made to Christopher and Elizabeth Canavan be canceled and held for naught against his rights and that the court appoint some person as special master to sell the 159 acres for the purpose of satisfying Kitchen's judgment.

On April 6, 1925, the District Court entered a decree in the suit brought by Dobson, in favor of Kitchen on his petition in intervention against all the defendants therein named. It found that all of the allegations made by Kitchen in his petition were true and that he was entitled to the relief for which he prayed against the Rocky Cliff Company and the other defendants, and it decreed that the amount of Kitchen's judgment, less a named sum which he owed the Rocky Cliff Company (leaving a large balance in his favor), was a first lien upon the 159 acres, describing it; it further decreed that the deed of date August 4, 1919, purporting to convey the land to Christopher and Elizabeth Canavan and an alleged correction deed made September 22, 1919, by said Rocky Cliff Company to said Christopher and Elizabeth Canavan be set aside, canceled and held for naught as against the rights of Peter Kitchen to levy upon and subject said land to the payment of his judgment, that the execution of said two deeds was a fraud against the rights of

Kitchen, that Christopher and Elizabeth Canavan accepted said deeds with knowledge of the pendency of that suit and of the suit that was pending brought by Peter Kitchen against the Rocky Cliff Company and Stephen Canavan, in which judgment was rendered in favor of Kitchen; it adjudged that the title conveyed by Kitchen to Dobson be quieted as against the claims of the Rocky Cliff Company, Stephen Canavan, Elizabeth Canavan and the unknown heirs of Christopher Canavan, but that the title so held by Dobson was in trust only in favor of Kitchen to the extent of the amount of his said judgment; it adjudged that the defendants were barred and estopped from having or claiming any right or title to the premises adverse to the claim of Kitchen; it dismissed the cross-complaint of Christopher and Elizabeth Canavan; and the court appointed a special master to execute its decree, directed him to sell the land at public sale after advertisement and provided that Peter Kitchen might be a bidder at said sale. The master sold the property, as he was commanded to do in the decree, on July 20, 1925, to Peter Kitchen. This sale was approved, and at the direction of the court the master conveyed the land to Kitchen, his deed bearing date August 6, 1925. Between the date of sale and execution of the master's deed appellee instituted this suit.

One year and five months after Dobson instituted the suit in which Kitchen intervened Christopher and Elizabeth Canavan executed a warranty deed which purported to convey the 159 acres to Stephen Canavan and Bertha Canavan, his wife, and this is the only muniment of title on which appellee can rely in support of the allegations of her bill that she is the owner of the 159 acres, or an undivided half-interest therein.

[1-5] The record does not disclose the reason which led the court to the conclusion that appellee was entitled to have the decree which was entered. Its effect is to take from Kitchen an undivided half-interest in the land, and subject the other half to the lien of the judgment recovered by Ruiz and Clancy, which was acquired by appellee in April, 1921. This can be done in no other way than by holding that appellee and her husband acquired good title to the whole tract as against Kitchen, under the deed to them made by Christopher and Elizabeth Canavan, of date January 19, 1920, which was recorded April 25, 1922. On the plainest principles we think this is an erroneous conception of the rights of the parties to this suit. In our opinion there can be no doubt on the facts that the deeds executed on August 4 and September 22, 1919, by Stephen Canavan and Bertha Canavan, as officers of the Rocky Cliff Company, purporting to convey in the name of and on behalf of that company good title to Christopher and Elizabeth Canavan, was a fraudulent conveyance as to appellant Kitchen, and that Bertha Canavan, as well as her husband, had actual knowledge of the fraudulent purpose of that conveyance. Nor can we rid our minds of the unavoidable inference that the subsequent deed from Christopher and Elizabeth Canavan to Stephen and Bertha Canavan was a part and continuation of the fraudulent purpose to defeat Kitchen in the collection of his claim. This record, and the facts in the case, constitute a distinct challenge of the good faith of appellee and her husband in taking the deed from Christopher and Elizabeth Canavan. That transaction was between members of the same family and called for explanation when the title of the grantees was denied. Besides, ever since Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 388, it has been the uniform rule that a claim of good-faith purchaser without notice and for value is an affirmative defense to be plead and established by the claimant; but appellee is silent in plea and in testimony on the point. See U. S. v. Krueger (C. C. A.) 228 F. 97; Wright-Blodgett Co. v. United States, 236 U. S. 397, 35 S. Ct. 339, 59 L. Ed. 637; Great Northern Railway v. Hower, 236 U. S. 702, 35 S. Ct. 465, 59 L. Ed. 798. The corporation was insolvent when the deed of the company to Christopher and Elizabeth Canavan and the deed from them to Stephen and Bertha Canavan were made. The Rocky Cliff Company had no other assets than this land. Nothing was left with which it might pay Kitchen's claim. In that condition of its affairs the appellee and her husband, as officers of the company, occupied a fiduciary relation toward Kitchen which prevented them from appropriating the company's assets to themselves or otherwise diverting them from its creditors. Stuart v. Larson (C. C. A.) 298 F. 223; Fletcher's Cyc. Corp. vol. 8, sec. 5145. Kitchen had an equitable right to have the land applied in payment of his claim, and he may not now be despoiled of his title thus acquired by one of the perpetrators of the fraud against him, nor may his title be extinguished by sale of any part or interest in the land under a prior lien which appellee now holds, but which she acquired after knowledge on her part of the fraud

against Kitchen. 27 C. J. title "Fraudulent Conveyances," §§ 521, 524, 526, 531.

The decree is reversed, with directions to set it aside and to dismiss appellee's bill on its merits at her cost.